# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARTHA BURCH,<br><br>       Plaintiff,<br>  v.<br><br>WELLS FARGO BANK, N.A.,<br><br>       Defendant. | **MEMORANDUM OF DECISION**<br><br>Case No. 3:13-cv-00201-SLG |

## I. INTRODUCTION

This is an action brought against Wells Fargo in which Plaintiff seeks compensation for injuries she suffered after she slipped and fell on January 12, 2013 at the branch of Defendant's bank located in Palmer, Alaska. Neither party requested a jury trial. Accordingly, a bench trial in the case was held in November 2015.

Federal Rule of Civil Procedure 52(a) provides that "[i]n an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately." Having considered the testimony of the witnesses, the exhibits admitted into evidence, and the parties' arguments and filings, this Court now makes Findings of Fact and Conclusions of Law as set forth below.[1]

---

[1] This Memorandum of Decision does not purport to recite all of the evidence submitted and arguments made by the parties. *See* Fed R. Civ. P. 52(a) Advisory Committee's Note (1946 Amendment) ("[T]he judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts.").

## II. **FINDINGS OF FACT**

1. Plaintiff Martha Burch slipped and fell on January 12, 2013, at about 12:50 p.m., on Defendant's sidewalk just outside the entrance to the Palmer branch of the bank. Palmer is a town of about 6,000 residents located about 45 minutes north of Anchorage, Alaska.[2] Although some evidence was presented that Ms. Burch may have tripped, the Court finds it more likely than not that she slipped and fell on the sidewalk. Ms. Burch first walked on the grass, which was crunchy, but without snow on it. She then stepped onto the bank's sidewalk, where she slipped and fell. The sidewalk did not have any accumulated snow on it when Ms. Burch fell, and it did not look slippery to Ms. Burch as she approached it and stepped onto it. However, the sidewalk had a thin layer of black ice on it that caused Ms. Burch to slip and fall.

2. Ms. Burch broke her right hip when she fell, and also lacerated her head near her eyebrow. She has incurred significant medical expenses as a result of the fall, and has had considerable pain and suffering.

3. Demetra Skylar Stewart testified at trial. Ms. Stewart was the branch manager at the Palmer branch of Wells Fargo in January 2013, but was not working on the day of the incident. Based on her testimony, the Court finds that the maintenance of the bank's sidewalks at the Palmer branch was not well-managed, particularly with regard to black ice removal. Rather, the maintenance of the bank's sidewalks was somewhat ad hoc with the result being that the sidewalks were not always maintained in a reasonably safe

---

[2] The Court takes judicial notice of Palmer's population by reference to the 2010 United States Census. *See* Evidence Rule 201.

condition. For example, on the day of the incident, when Ms. Burch's husband, Ronald Burch, returned to the bank for a second time to take photographs of the scene late in the afternoon, there was still blood and ice on the sidewalk, with very little evidence of any ice-melt having been used, although by that time freezing rain had been falling for a few hours.

4. Angelina Burns was the service manager in charge at the Palmer Wells Fargo branch the day of the incident. Based on her testimony, as well as the weather data from the National Oceanographic and Atmospheric Administration (NOAA) that was admitted into evidence at trial, the Court finds it more likely than not that when the bank employees arrived at the branch that morning between 9 a.m. and 10 a.m., the bank's sidewalk was dry and not at all slippery.

5. Ms. Burns testified that the vendor, Joe Lentz, had primary responsibility to take care of the sidewalks each morning, including putting down ice melt if there was any ice. The Court did not find this testimony persuasive. Rather, Mr. Lentz testified quite persuasively to the Court that he actually never considered black ice or treated for it on the bank's sidewalks. The Court finds that Mr. Lentz's maintenance of the bank's sidewalks was limited to snow removal when there was over two inches of accumulation.

6. On the day of the incident, no customers had mentioned to the bank's employees that the sidewalks were slick prior to Ms. Burch's fall, and prior to the incident none of the employees had taken a break outside of the bank building. Ms. Burns did not notice that there was freezing rain on the day of the incident until after Ms. Burch had fallen, when Ms. Burns went outside for the first time since she arrived at work that day. Ms. Burns

acknowledged that there was ice on the sidewalk when she went outside after Ms. Burch had fallen; she described that ice as slightly slick. In an incident report that Ms. Burns completed immediately after Ms. Burch's fall, Ms. Burns indicated that there was freezing rain and black ice at the time of the fall. Based on the weather reports admitted into evidence at trial, as well as the testimony of both Ms. Burns and Ms. Burch, the Court finds that there was light freezing rain falling at the time Ms. Burch fell, which had started to fall less than one hour prior to Ms. Burch's fall and that there was a thin layer of black ice on the sidewalk. As Ms. Burns testified, black ice is typically not shiny and therefore harder to detect. This fact is consistent with Ms. Burch's testimony that she did not notice the sidewalk was slippery when she stepped onto it.

7. At trial, Plaintiff called Jay Smith to testify, who was qualified as an expert in the fields of mechanical engineering, the mechanisms of a fall, and implementation of procedures to prevent falls on snow and ice. The Court agrees with Mr. Smith's opinion that in January 2013 Wells Fargo did not have an adequate procedure or plan in place for black ice removal from the sidewalks at the Palmer branch. Mr. Smith also opined that the bank should be monitoring the weather conditions so as to make sure the property is safe throughout the day for customers coming and going. The Court agrees with this opinion to some extent—and in fact the bank employees did monitor the weather to some extent during their work days. But in the Court's view, a reasonable bank branch operator in Palmer is not required to be monitoring the weather so continuously so as to insure that all black ice is eliminated from its sidewalks within less than an hour of the onset of light freezing rain. Mr. Smith also opined that ice-melt can be put down on a dry sidewalk

in advance of freezing rain, and that ice-melt can be mixed with water for that purpose. Because ice-melt can be effective when used in this manner, Mr. Smith opined that the bank should have had a system to identify when hazardous weather was likely and put down ice-melt as a precaution. The Court disagrees with Mr. Smith to the extent that he is asserting that the bank's duty of care extends to the preventative use of ice-melt on dry sidewalks when there is a weather prediction for freezing rain. Mr. Smith acknowledged that the only company he was aware of that monitored the weather predictions was responsible for monitoring ice fog on the airport runways, where the risk of serious injuries is of a very high magnitude. In conclusion, Mr. Smith opined that the root cause of Ms. Burch's slip and fall was inadequate monitoring by the bank and failure to correct the slippery condition caused by the freezing rain. The Court disagrees with this conclusion, given that Ms. Burch fell within less than an hour of the onset of the light freezing rain. In the Court's view, any deficiency in the bank's monitoring of the condition of the sidewalks was not a substantial factor in causing Ms. Burch's fall. Rather, as Ms. Burch herself testified, the sidewalk did not look slick to her immediately before she stepped onto it. Therefore, even if bank employees had been carefully monitoring the weather conditions, they would likely not have noticed the slick sidewalk prior to Ms. Burch's fall.

8. Mr. Smith did not review Ms. Burch's deposition or any official weather reports before drafting his report. The Court has accorded considerably less weight to Mr. Smith's opinion on causation in light of these limitations.

9. The NOAA weather data admitted into evidence at trial had hourly data entries for the nearby Palmer airport. The data showed trace precipitation first being recorded at

11:53 a.m. on the day of the incident, and then recorded trace precipitation for each hour thereafter, with measurable precipitation first being recorded at 15:53 p.m. that day—three hours after the incident. Rain is not recorded until 12:53 p.m. entry, which is right about the time of Ms. Burch's fall. This data supports the Court's conclusion that light freezing rain had begun to fall on the sidewalk less than one hour prior to Ms. Burch's fall. Prior to that time, the sidewalk was dry. The Court finds that there was no significant accumulation of snow or ice on the sidewalk at the time that Ms. Burch fell. Rather, a thin layer of black ice had formed on the sidewalk that was not visible to either the bank's employees or to Ms. Burch.

10. The bank did not have actual or constructive notice that black ice was on the sidewalk at the time Ms. Burch fell.

11. Upon consideration of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk, the Court finds that Wells Fargo did not breach its duty of care to maintain its sidewalk in a reasonably safe condition when it did not have ice-melt or sand on the sidewalk at the time that Ms. Burch fell, at approximately 12:50 p.m. on January 12, 2013, particularly because the freezing rain had just started to fall and the black ice had just begun to be present on the sidewalk. The Court also finds that the Wells Fargo Palmer branch did not have a duty to monitor the weather predictions and place ice-melt or sand out on a dry sidewalk when the weather prediction was for freezing rain, and hence was not negligent when it failed to do so.

## III. CONCLUSIONS OF LAW

1. The Court has jurisdiction over this action based upon diversity of citizenship, as there is complete diversity between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332, 1441.

2. Plaintiff has the burden of proving her claim by a preponderance of the evidence, which means the trier of fact must be persuaded by the evidence that the claim is more likely true than not true.

3. Alaska substantive law applies to the resolution of this dispute. *See First Intercont'l Bank v. Ahn*, 798 F.3d 1149, 1153 (9th Cir. 2015) (holding that substantive law of the forum state applies in diversity actions); *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938).

4. Under Alaska law, a landowner "must act as a reasonable person in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk." *Webb v. City & Borough of Sitka*, 561 P.2d 731, 733 (Alaska 1977), *superceded in part by* AS 09.65.200, *as recognized in Univ. of Alaska v. Shanti*, 835 P.2d 1225, 1228 n.5 (Alaska 1992); *see also Hurn v. Greenway*, 293 P.3d 480, 483 (Alaska 2013).

5. The Alaska Supreme Court has observed that a grocery store "is a more confined space and more intensely managed environment" than a highway, and held that these are factors that a trier of fact may consider in determining whether the proprietor of a grocery store acted reasonably in maintaining the store's premises considering all of the circumstances. *See Edenshaw v. Safeway, Inc.*, 186 P.3d 568, 570 (Alaska 2008) (citing

*Ortega v. Kmart Corp.*, 36 P.3d 11, 15–16 (Cal. 2001) (noting that owner exercises reasonable care by making inspections inside of grocery store within a particular period of time prior to an accident)). The interior of a grocery store presents a set of heightened risks due to the prevalence of spills or other merchandise-related conditions that would not be present at a sidewalk outside of a bank. *See id.*; *Ortega*, 36 P.3d at 15–16) ("A person operating a grocery and vegetable store in the exercise of ordinary care must exercise a more vigilant outlook than the operator of some other types of businesses where the danger of things falling to the floor is not so obvious." (quoting *Louie v. Hagstrom's Food Stores*, 184 P.2d 708, 712 (Cal. App. 1947))).

6. As in any negligence case, a plaintiff in a slip-and-fall action "has the burden of showing that the defendant owed [the plaintiff] a duty, that the defendant breached that duty, that [the plaintiff] was injured, and that the breach of duty was the proximate cause of [the plaintiff's] injury." *Edenshaw*, 186 P.3d at 571.

7. The Alaska Supreme Court has held that actual or constructive notice of a hazardous condition is one factor that a factfinder may consider in determining reasonableness; it is not an element of a prima facie case in a slip-and-fall action. *Edenshaw*, 186 P.3d at 570–71.

8. The Alaska Supreme Court has declined to adopt a "mode of operation" rule, which would provide for liability if a plaintiff shows that the hazard was reasonably foreseeable from the owner's method of doing business, reasoning that "because actual or constructive notice is not an element of a prima facie case in a slip-and-fall action [in Alaska], there is no need for a mode of operation rule." *Edenshaw,* 186 P.3d at 570.

9.      Negligence is a substantial factor in causing harm if the harm would not have occurred without the negligence, and the negligence was important enough in causing the harm that a reasonable person would hold the negligent person responsible.  The negligence cannot be a remote or trivial factor.  Alaska Pattern Jury Instructions (CPJI) 3.07.

10.     Plaintiff has not established by a preponderance of the evidence that at the time that she fell on the sidewalk, Wells Fargo had breached its duty to Plaintiff to act as a reasonable property owner in maintaining its sidewalk in a reasonably safe condition in view of all the circumstances.  Any improper or inadequate maintenance by Wells Fargo regarding ice removal from its sidewalk that had occurred at other times was not a substantial factor in causing harm to Ms. Burch.

## IV.    CONCLUSION

For the foregoing reasons, this Court finds and concludes that judgment shall be entered for Defendant.

Dated this 10th day of August, 2016.

                                                 */s/ Sharon L. Gleason*
                                                 UNITED STATES DISTRICT JUDGE